W. D. BARR et al., Respondents, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, Submitted April 13, 1909. Opinion Filed June 8, 1909.

1. PRACTICE: Bills of Exceptions: Time for Filing: Nunc Pro Tunc. Where the trial court made an order on the first day of the term extending the time for filing a bill of exceptions, and the clerk failed to enter such order, such omission was cured by a nunc pro tunc order made subsequently during the same term, giving leave to file the bill of exceptions; the nunc pro tunc order being made at the same term, no memorandum from which to do it was necessary.

2. EVIDENCE: Variance: Common Carriers: Live Stock. In an action against a common carrier for injuries to live stock where the petition alleged that the injuries were caused by the carrier's negligence and carelessness in operating its trains and in caring for the live stock while in transit, evidence that the stock was injured by *delay* in shipment was not admissible.

3. ————: ————: ————. ————: Instructions. In an action by a shipper against a common carrier for injuries to the live stock of plaintiff while being shipped by defendant, where the petition alleged that the injuries were caused by carelessness of the carrier's employees in permitting the stock to lie upon the floor of the car, and while down to be kicked and trampled by other stock, an instruction that the jury should return a verdict for the plaintiff if they should find that the stock was injured by being knocked down, thrown or falling upon the floor of the car was erroneous.

4. ————: Instructions: Failure to Instruct: Self-Invited Error. Where a party to a suit failed to ask instructions in his favor on a certain issue at the time of the trial he cannot complain on appeal of the failure of the trial court to give instructions covering such issue.

5. ————: Remarks of Counsel: Commenting on Excluded Testimony. Where counsel in his argument to the jury referred to testimony which had been excluded and after being corrected by the court repeated his statement, and the court neglected to rebuke him, this constituted reversible error.

Appeal from the Lewis Circuit Court.—*Hon. Chas. Stewart*, Judge.

REVERSED AND REMANDED.

*Clay & Johnson* and *J. G. Trimble* for appellant.

Courts have authority, upon oral evidence alone, to make a *nunc pro tunc* entry of any judgment or order, if such entry be made before the end of the term at which such judgment or order was rendered.   McGonigle v. Bresnen, 44 Mo. App. 425; State v. Jeffors, 64 Mo. 379; Ross v. Railroad, 141 Mo. 396; State v. Libby, 203 Mo. 599; State v. Gartrell, 171 Mo. 504; Saxton v. Smith, 50 Mo. 491; York v. Stigall, 204 Mo. 407; Dawson v. Waldheim, 89 Mo. App. 249.

*Marchand & Rouse, W. R. Ray* and *E. R. McKee* for respondents.

The court erred in ordering *nunc pro tunc* entry of order extending time to file bill of exceptions. Courts have no authority to grant *nunc pro tunc* orders supplying records, though applied for at same term omission occurred, save on recollection or memory of the judge, or record evidence that such order had been made.   The evidence does not warrant granting the *nunc pro tunc* order.   Coke, p. 260a; Cooley's Blackstone, p. 408; 1 Black on Judgments, sec. 153; Freeman on Judgments, sec. 69; Belkins v. Rhodes, 67 Mo. 643; Young v. Young, 165 Mo. 624; Gibson v. Chouteau, 45 Mo. 171; Fletcher v. Combs, 53 Mo. 430; Gormley v. St. Louis Traction Co., 126 Mo. App. 405; Atkinson v. Railroad, 81 Mo. 50; Perkins v. Perkins, 27 Ala. 479; Becker v. Schutte, 85 Mo. 57.

STATEMENT.—The petition in this case when filed consisted of two counts, each of them setting out with great particularity the causes of action upon which plaintiffs rely.   At the trial and after the court had given its instructions to the jury, the second count was dismissed by plaintiffs.   It is only necessary to notice

the first count.   This first count avers the shipment of a carload of horses by plaintiffs over the road of defendant from Maywood, in Lewis county, this State, to Quincy, Illinois, and charges that the horses were in good condition when loaded but were not delivered in good condition to plaintiffs at Quincy, but that the defendant had so negligently and carelessly run and operated the train to which the carload of horses was attached and so misbehaved in regard to the same as a common carrier in that it negligently suffered and permitted six of the horses to be bruised, injured and damaged by the carelessness and recklessness of its agents and servants in charge of the train, so that the six horses which were knocked down, thrown or fell upon the floor of the car in which they were being carried, were carelessly and negligently allowed to remain down on the floor by the agents and employees of defendant, and that these employees negligently and carelessly allowed and permitted other horses in the car to trample upon and bruise and injure horses so carelessly allowed and permitted to remain upon the floor of the car, and that while lying on the floor, they were kicked and struck by other horses and injured and bruised by the horses, and that when the attention of the agents, servants and employees of defendant was called to the condition of the horses so injured as aforesaid, and they were requested by plaintiffs to aid in getting the horses on their feet, they refused to do so, and when these agents were requested to separate the car containing the horses from the train and leave the car at West Quincy, so that the horses could be put upon their feet again, these agents and employees carelessly and negligently refused to aid plaintiffs in getting the horses on their feet and to separate the carload of horses from the train and leave it at West Quincy, and carelessly and negligently persisted in and continued to run the train and carload of horses into the city of Quincy, by and through which carelessness and negligence of these

employees, etc., other horses of plaintiff in the car were knocked down or fell down upon the floor of the car in which they were being carried, and were trampled upon by other horses, and thereby, through the careless-ness and negligence of the employees of defendant, greatly bruised, injured and damaged for which plain-tiff claim $500.

On trial before the court and jury, a verdict for $500 was rendered in favor of plaintiffs.    Defendant filed its motion for a new trial, and that being overruled and exceptions duly saved, brought the case here on appeal.

The errors complained of are to the giving of in-structions at the instance of plaintiffs, the admission of testimony over objection by defendant and to improper remarks by counsel in the argument of the case to the jury, made, as it is alleged, outside of the record and to the prejudice of defendant and unreproved by the court when its attention was called to the remarks. The presence of any bill of exceptions is sharply chal-lenged by the plaintiffs, on the ground that it was filed out of time, and that the orders extending the time for filing it were made without authority by the court.

REYNOLDS, P. J. (after stating the facts).—I. The objection to the bill of exceptions is not tenable. It appears that there was an omission on the part of the clerk to enter up an order made on the first day of the September term of the court, extending the time for filing the bill of exceptions.    That omission was cured by an order of the court entered in November, but during the same term at which it was claimed the order granting the leave had been entered. · While it is claimed that the court entered a *nunc pro tunc* or-der, giving leave to file the bill of exceptions, without having any written memoranda from which to do so, yet as it appears that the court took and heard evidence satisfying it that the order had been made at that term

and on that day and that the failure to enter it was an oversight of the clerk, we cannot sustain the objection. Nor are the authorities cited in support of it applicable as they do not cover *nunc pro tunc* orders made at the same term at which it was claimed the original order had been made and by mistake omitted from the record. The whole case and all entries, as well as all record entries of the term, were within the control of the court during the term and we will not interfere with its action concerning its records of the term, the corrections being made during the term.

II.   We have set out the substantial parts of the count of the petition on which the case was tried.   It will be observed that the cause of action is founded solely upon negligence and carelessness in handling the train by which it is alleged some of the horses were thrown down and injured and after being thrown down were suffered to remain in that condition and while down were kicked and trampled on and injured by the other horses in the car.   That is the gravamen of this count of the petition.   While one of the witnesses for the plaintiffs was under examination he was asked what time the car with the horses got to Quincy.   He said: "About half past six in the evening."   He was then asked why these horses remained in these pens until the next evening, if he knew.   This was objected to for the reason that there is no allegation that the horses were to be shipped any farther than Quincy, no allegation of delay or claim for damages for delay at Quincy or anywhere else.   The court overruled the objection, saying that he would permit the question for the purpose of showing delay, if any.   Defendant duly excepted to this ruling and the witness answered that the people of the connecting road by whom they were to be taken on to Chicago, "wouldn't receive them, marked 'Bad Order,' until something was done about it."   Another witness was asked when he had next seen these horses,

that is, after they had arrived at Quincy. He answered that he was telephoned to and went down to Quincy to see them that same night, "and I went to the yard and they wouldn't receive the horses there." This was objected to on the ground that there was no allegation of damage on account of delay. The objection was overruled and defendant's counsel duly excepted. The issue of delay and damage caused by delay at Quincy, was not in this case and it was error to allow these questions to be asked. The hurtful character of the question itself appears by the answer to the first question. The witness was permitted by his answer to this question practically to put in the opinion of other persons as to the bad condition of the horses, mere hearsay. It is true, that this particular answer was not objected to, but the improper question brought it out, and taken in connection with the question, shows the harmful and prejudicial character of the question itself. We do not wish to be understood as slurring over the fact that there was no exception taken to this answer itself. That being so, of course we have no right to reverse on account of that answer. We refer to the answer merely by way of illustration of the harmful nature of the question. Both these questions injected an element of damage into the case not supported by the petition upon which the case was being tried and it was prejudicial and reversible error against the defendant to permit them to be asked.

III.    There are many errors assigned to the instructions, but it is only necessary to notice one or two of them. The first instruction authorized the jury to return a verdict for plaintiffs, if they should find that some of the horses of plaintiffs were bruised, injured or damaged by being knocked down, thrown or falling down upon the floor of the car, etc. The count of the petition does not contain this allegation as the cause of damage. There is the general allegation that the

horses were injured and bruised by the carelessness and recklessness of the agents and employees of defendant. Then, particularizing the damage, the count specified that it consisted of permitting other horses in the car to trample upon, bruise and injure the horses which were down on the floor and that the horses down upon the floor kicked and injured other horses, and that other horses were knocked down between West Quincy and Quincy, were trampled upon by horses in the car and thereby bruised. This instruction was therefore on a theory different from that contained in the petition and should not have been given.

IV. It is urged against this and another instruction that the court should have instructed the jury as to what occasioned the throwing down of the horses; that while the court told the jury that if the throwing down was occasioned by a jolt or jerk of the train, that this was not sufficient; that the court should have told the jury what constituted such negligence or carelessness as produced the unusual jolting or jerking of the car: that all freight and cattle trains moved more or less, with jerks and joltings and that the mere jerk and jolt did not in themselves prove careless or negligent handling of the train. That is true, but if defendant desired the court to be more particular in defining this element, it was the duty of defendant to have requested an instruction to that effect, and it cannot assign error, in a civil action, on mere non-instruction, if the only defect in the instruction given is lack of particularity, failure to qualify or to instruct particularly. This has been decided many times.

V. In the argument of the case to the jury, one of the counsel for plaintiffs, addressing the jury, said: "Jeffries said some time while he was riding on the freight train over that road there was an extraordinary jerk." Counsel for defendant objected to the remark, saying that there was no such evidence as that before

the jury.     The court then said to counsel for plaintiffs who had made the remark to the jury, that that evidence was excluded, whereupon counsel for plaintiffs said:  "I know that he said it.     I didn't know it was excluded, but he said it."     This was objected to by counsel for defendant.     The court made no comment upon and did not rule on the objection, and did not rebuke counsel for his repetition of the statement that the witness had said it and he, counsel, knew he said it.     Governed by decisions of our Supreme Court and of this court, we hold that the reassertion of that as a fact in evidence, which the court distinctly told counsel had been excluded, is reversible error.     If counsel choose to jeopardize their verdicts by remarks outside of the case, they have no one to blame but themselves.

This is a very simple case, and on a retrial, if one is had, the evidence can surely be kept within the pleading as made.

The judgment of the trial court is reversed and the cause remanded.     All concur.

